Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 5758 | DATE | 12/17/2004 |
| CASE TITLE | HOLLEY PERFORMANCE PRODUCTS, INC. vs. BARRY GRANT, INC. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motion to dismiss [9-1] is granted. This case is dismissed without prejudice. Alternatively, the court declines to exercise jurisdiction. The motion to transfer venue pursuant to 28 U.S.C. § 1404(a) [9-2] is moot. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 20 2004 date docketed | |
| | Docketing to mail notices. | | | 17 |
| | Mail AO 450 form. | | rbf docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| | | | 12/17/2004 date mailed notice | |
| CB | courtroom deputy's initials | 2004 DEC 17 PM 3:23 | PW | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
DEC 2 0 2004

| | | |
|---|---|---|
| HOLLEY PERFORMANCE PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 5758 |
| | ) | |
| v. | ) | Suzanne B. Conlor, Judge |
| | ) | |
| BARRY GRANT, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Holley Performance Products, Inc. ("Holley") sues Barry Grant, Inc. ("Grant"), for declaratory judgment of non-infringement and invalidity of Grant's United States Patent No. 6,286,817 ("the '817 patent"). Grant moves to dismiss the complaint for lack of a justiciable controversy pursuant to Fed. R. Civ. P. 12(b)(1). If the court determines it has subject matter jurisdiction over Holley's declaratory judgment claim, Grant requests the court decline to exercise jurisdiction due to pending litigation between the parties in another forum. In the alternative, if the court determines it has subject matter jurisdiction and that it should exercise jurisdiction, Grant moves to transfer this action to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).

### BACKGROUND

The '817 patent claims an automotive carburetor fuel bowl with a fuel level indicator that determines the level of fuel in the bowl during operation of the engine. Grant Mot. at 1-2. On August 10, 2004, Grant sent Holley's CEO a letter stating:

1



> It has come to my client's attention that Holley has recently begun the production and sale of a new line of carburetors that includes improved features, including the fuel level indicator...
>
> I have reviewed the Barry Grant '817 patent, and have compared the patent with one of the Holley carburetors. The sight glass on the Holley carburetor is positioned at the exact level as described in the Barry Grant '817 patent, and has all of the features described in the claims of the patent...
>
> Since it appears that several of the claims of the '817 patent read directly on the new Holley carburetor, we request that you confer with your intellectual property attorneys concerning the patent and the likelihood of infringement of the patent by the new Holley carburetor.
>
> As you probably know, a patent gives its owner the right to exclude others from making, using, selling, offering for sale, and importing goods that infringe the claims of a patent. If a judgment of infringement of a patent is rendered in a U.S. District Court, the damages for infringement of the patent can be the loss of profits by the patent owner, attorneys' fees, prejudgment interest, and, in some instances, up to three times actual damages if the infringement of the patent was willful.
>
> With such severe damages likely to be assessed for infringement, we suggest that Holley's representatives review the patent and compare it with the Holley carburetors so as to make Holley's own determination with regard to infringement of the '817 patent.
>
> We request that if the conclusion made by or on behalf of Holley is that there is no infringement, please explain in detail why the claims of the patent are not infringed.
>
> If you or your counsel have any questions concerning this matter, let me know. We would expect to receive a written response to this matter within two weeks of the date of this letter.

*Id.* at Ex. A; Compl. ¶ 2. The August 10, 2004 letter was the only communication between Holley and Grant prior to Holley's filing of this declaratory judgment complaint on September 1, 2004. *Id.* at 2. On October 19, 2004, Grant filed suit against Holley in the United States District Court for the Northern District of Georgia for infringement of the '817 patent. Holley is a Delaware corporation

with its principal place of business in Bowling Green, Kentucky. Compl. ¶ 5. Grant is a Georgia corporation with its principal place of business in Dahlonega, Georgia. *Id.* at ¶ 6.

## DISCUSSION

I.  **Motion to Dismiss**

The Declaratory Judgment Act ("the Act") provides a district court may declare the rights and legal obligations of an interested party "in a case of actual controversy." 28 U.S.C. § 2201; *see also Applexion S.A. v. Amalgamated Sugar Co.*, No. 95 C 858, 1995 U.S. Dist. LEXIS 4957, \* 7 (N.D. Ill. Apr. 14, 1995). The declaratory judgment plaintiff bears the burden of establishing the existence of an actual case or controversy. *Cardinal Chemical Co. v. Morton Int'l Inc.*, 508 U.S. 83, 95 (1993). "An actual controversy exists if there is a definite and concrete dispute between adverse parties amenable to immediate and definitive determination." *Applexion*, 1995 U.S. Dist. LEXIS 4957 at \*8 (citations omitted). For an actual controversy to exist in a patent action, there must be both: (1) action by the patent holder creating in the declaratory plaintiff a reasonable apprehension of an infringement suit; and (2) present activity by the declaratory plaintiff that the patentee asserts infringes the patent, or concrete steps taken with the intent to conduct such activity. *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993). "The purpose of the two-part test is to determine whether the need for judicial attention is real and immediate or is prospective and uncertain of occurrence." *Id.*, (citation omitted). The test is objective. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988). Reasonable apprehension must exist at the time suit is filed. *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398-99 (Fed. Cir. 1984).

3

Grant contends the August 10, 2004 letter was insufficient to provide Holley reasonable apprehension that Grant would file suit against Holley for infringement of the '817 patent. Grant asserts the August 10 letter formally notified Holley of the '817 patent and sought to engage Holley in a dialogue regarding the new Holley carburetor and the '817 patent. Grant asserts Holley ignored the letter's invitation for non-judicial dialogue to determine whether an actual controversy existed, and instead raced to filed a lawsuit. Grant contends Holley's complaint must be dismissed because there was no actual controversy or objectively reasonable apprehension of imminent litigation when the complaint was filed.

Holley contends the letter clearly created a direct threat of an infringement suit. Holley asserts Grant's claims are belied by its own actions because Grant did in fact file an infringement suit. Holley contends the August 10, 2004 letter suggested Grant's counsel carefully studied Holley's products as they relate to the '817 patent and determined Holley's products infringed the patent. The letter described infringement damages and fees, and gave a two week deadline for Holley to inform Grant of its infringement position. Holley contends it was entitled to consider the letter in light of the companies' past competitive relationship and litigation history.

The crux of this dispute is whether Holley had a reasonable apprehension that it would face an infringement suit. There is no dispute that Holley has satisfied the second prong of the declaratory judgment jurisdictional test; Holley currently sells products that contain the accused device. Holley must establish, however, that the feared lawsuit was real and immediate, rather than merely speculative. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002). "The sole requirement for jurisdiction under the Act is that the conflict be real and immediate, i.e., that there be a true, actual 'controversy' required by the Act." *Arrowhead*, 846 F.2d at 734-35 (citations

4

omitted). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1379-80 (Fed. Cir. 2004) (citations omitted). An express charge of infringement by the patent holder necessarily creates a controversy adequate to support jurisdiction. *Cardinal*, 508 U.S. at 96. If a patent holder's conduct and statements fall short of an express charge, the court considers the "totality of the circumstances" to determine whether reasonable apprehension existed when the complaint was filed. *Arrowhead*, 846 F.2d at 736.

In *Arrowhead*, the court found reasonable apprehension existed when the totality of circumstances reflected the patent holder's litigation intent. *Arrowhead*, 846 F.2d at 737. Before plaintiff filed suit, however, the patent holder in *Arrowhead* sent plaintiff multiple threatening letters, told plaintiff's customers that plaintiff was infringing the patent, resulting in customer requests for indemnification, and requested that plaintiff be found an infringer in separate federal litigation. *Id.* Similarly, in *Applexion* this court found reasonable apprehension existed when the patent holder exhibited express and implied warnings of suit through communications to plaintiff's customers and *five* letters, stating, for example: "[we] cannot ignore the ongoing infringement activities of your client," and "[we have] no choice but to proceed upon the best information that [we] can obtain through diligent efforts. We consider that those diligent efforts have now been made." *Applexion*, 1995 U.S. Dist. LEXIS 4957 at *9-15; *see also Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1482 (Fed. Cir. 1998) (reasonable apprehension existed when patent holder wrote two letters, to which plaintiff responded, indicating patent holder considered product to be "an infringement of one or both of the subject patents," and intended "to vigorously enforce and protect its rights in the

5

subject patents, including the filing of suit if necessary"); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812-13 (Fed. Cir. 1996) (reasonable apprehension existed in light of patent holder's letter indicating its inclination to turn the matter over to litigation counsel for action and urging business discussions to avoid "this matter escalating into a contentious legal activity," and the parties' three subsequent negotiation sessions).

In contrast, the August 10, 2004 letter does not expressly accuse Holley of infringement.[1] Nor do the totality of circumstances dictate reasonable apprehension of imminent suit. Indeed, the "totality of circumstances" consist of a single communication between the parties. The August 10, 2004 letter indicates Grant compared Holley's product to the patent and concluded "it appears several of the claims of the '817 patent read directly on the new Holley carburetor." However, the letter clearly invites Holley to conduct its own comparison and analysis and to communicate with Grant regarding Holley's conclusions. The letter's discussion of the '817 patent and request for a response do not create an imminent threat of litigation. Although the letter discusses infringement damages, the damages discussion relates to Grant's request that Holley investigate the issue and, when read in context, impresses the serious nature of the issue on the reader.

Holley argues it was entitled to consider the letter in the context of the parties' litigation history. However, unlike *Goodyear Tire & Rubber Co. v. Releasomers Inc.*, 824 F.2d 953 (Fed. Cir. 1987) or *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002), where an earlier lawsuit involving the same parties and *same technology* created a reasonable apprehension of an infringement suit, the only litigation history Holley cites is a single trademark case, brought by

---

[1] In deciding a Rule 12(b)(1) motion to dismiss, the court may consider evidentiary materials outside the pleadings. *Nippon Exp. U.S.A. (Ill.), Inc. v. Mitsui Sumitomo Ins. Co. Ltd.*, No. 03 C 2524, 2004 U.S. Dist. LEXIS 6856, *5 (N.D. Ill. Apr. 21, 2004).

Holley against Grant, from almost seven years ago. The 1998 trademark case initiated by Holley over different subject matter is insufficient to create a reasonable apprehension that Holley faced an imminent – as opposed to speculative – lawsuit.

Holley recognizes the letter did not provide a deadline for filing suit. However, Holley contends the letter's two week deadline for a response reasonably caused the fear litigation would ensue if the two week deadline passed. This contention is belied by Holley's failure to respond to the letter, let alone file the declaratory action within the two week period. In other words, if Holley feared an infringement suit was imminent based on the letter's two week period, it is reasonable to expect Holley would have done *something* during the two week period. Moreover, this fear should have dissipated when the two weeks passed and an infringement suit did not follow. Indeed, Grant did not file suit until October 2004, more than two months after it sent the letter to Holley and a month and a half after Holley filed this suit. In any event, Grant's subsequent filing of an infringement suit is irrelevant to the reasonable apprehension prong because reasonable apprehension must be assessed as of the time Holley filed this complaint. *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398-99 (Fed. Cir. 1984).

Holley has not met its burden of establishing the existence of a real and immediate controversy requiring immediate judicial action. *Cardinal*, 508 U.S. at 95. Holley's assumption that an infringement suit was imminent was premature at the time it filed suit. Accordingly, the motion to dismiss for lack of a justiciable controversy must be granted.

## II. Exercise of Jurisdiction

Even if Holley established the existence of an actual controversy, and thus jurisdiction, this court would decline to exercise jurisdiction over the action. There is no absolute right to a

7

declaratory judgment. *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995). The exercise of jurisdiction over a declaratory judgment action rests within the sound discretion of the district court. *Id.*; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-88 (1995) (rejecting argument that district courts may decline to exercise declaratory judgment jurisdiction only in exceptional circumstances). A district court may not dismiss a declaratory judgment solely because a subsequent parallel infringement suit is filed in another district. *EMC Corp.*, 89 F.3d at 813 (citations omitted). Without other reasons, a dismissal would be contrary to the general rule favoring the forum where the first action was filed. *Id.* However, the court has discretion to make a reasoned judgment as to whether the investment of time and resources in the declaratory action will be worthwhile. *Id.*; *Serco*, 51 F.3d at 1039; *Coleman Co., Inc. v. Black & Decker Corp.*, No. 95 C 7379, 1996 U.S. Dist. LEXIS 986, *12 (N.D. Ill. Jan. 29, 1996). The first-filed action is preferred, unless "considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise." *Coleman*, 1996 U.S. Dist. LEXIS 986 at *12 (citations omitted).

The factors the court considers when deciding whether to dismiss a declaratory action in favor of litigation pending in a different district are the same as the factors considered when deciding to transfer venue to another district. *Id.*; 28 U.S.C. § 1404 (a) (courts to consider the convenience of parties and witnesses and the interest of justice when deciding whether to transfer venue). To prevail on a motion to transfer under § 1404(a), a party must demonstrate: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice. *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001), *quoting TruServ Corp. v. Neff,* 6 F. Supp. 2d 790, 793 (N.D. Ill. 1998). The parties

8

do not dispute that venue is appropriate both here and in the Northern District of Georgia. Therefore, the court considers the convenience of the parties and witnesses and the interests of justice.

## A. Convenience of the Parties

In determining the convenience of the parties and witnesses, the court considers: (1) Holley's choice of forum; (2) the site of material events; (3) the availability of evidence in each forum; and (4) the convenience to the witnesses and parties of litigating in the respective forums. *Confederation Des Brasseries de Belgique v. Coors Brewing Co.*, No. 99 C 7526, 2000 WL 88847, *3 (N.D. Ill. Jan. 20, 2000). Venue should be transferred only if there is a clear balance of inconvenience in the transferor district over the transferee district. *Tsaparikos v. Ford Motor Co.*, No. 02 C 6899, 2002 WL 31844949, *1 (N.D. Ill. Dec. 18, 2002). "Venue may not be transferred simply to shift inconvenience from the defendant to the plaintiff." *Id.*

A plaintiff's choice of forum is generally given substantial weight under § 1404(a). *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). However, where the plaintiff's choice is not its resident forum, the chosen forum is entitled to less deference. *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999). The Northern District of Illinois is not Holley's resident forum. Holley is a Delaware corporation with its corporate headquarters in Kentucky. Therefore, Holley's choice of forum is not given great deference and is only one of many factors the court considers. *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 902 (N.D. Ill. 2001).

The Northern District of Illinois is not the site of material events for the patent invalidity and noninfringement claims. "The material events of a patent infringement case do not revolve around a particular situs." *Sitrick v. FreeHand Systems, Inc.*, No. 02 C 1568, 2003 WL 1581741 at *3 (N.D. Ill. Mar. 27, 2003). In other words, the comparison involved in determining whether a patent has

9

been infringed does not implicate a specific location. *Id., citing Medi USA, L.P. v. Jobst Inst., Inc.,* 791 F. Supp. 208, 210 (N.D. Ill. 1992).

The relative ease of access to sources of proof slightly favors transfer. The only contact this litigation has with the Northern District of Illinois is that Holley sells its products to Illinois citizens. Yet a majority of the documents relevant to Holley's claims are at Grant's corporate headquarters in Georgia. The evidence relating to the design, invention and patenting of the '817 patent is located at Grant's principal place of business in Georgia. Johnson Dec. at ¶ 9. The copying and shipping of documents does not typically impose a significant burden. All documents necessary to present both sides of the case can easily be transported to either venue. *Hanley v. Omarc, Inc.,* 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998). Nevertheless, Holley's business records are not located in this district either. As a result, there is more evidence available in the transferee forum than here.

The court must also consider witness convenience in determining whether transfer is appropriate. While the location of employee witnesses is generally afforded little weight in the convenience analysis, their location is important in an intellectual property infringement case. *Matweld, Inc. v. Portaco, Inc.,* No. 04 C 1273, 2004 U.S. Dist. LEXIS 11483, *6-7 (N.D. Ill. June 21, 2004); *Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. Partnership,* 807 F. Supp 470, 474 (N.D. Ill. 1992). Grant's president is a resident of the requested transferee forum and is the named inventor of the '817 patent. Grant Dec. at ¶ 3. Grant lists three other Grant employees, including the vice-president of operations, sales manager and head of technical department, who would likely testify on Grant's behalf on the issues of infringement, willfulness, patent validity, and/or damages. In addition, Grant provides evidence that witness travel to Chicago would be extremely burdensome to the company's daily operations, due to the size and structure of the company.

Holley contends it has more than three employee witnesses for whom travel to Gainesville, Georgia would be less convenient than travel to Chicago. Holley does not provide any evidence to support this assertion. Indeed, Grant has submitted evidence that the relative travel convenience to Holley from its Kentucky headquarters to either forum is approximately the same. However, Holley argues the Chicago forum is more convenient for a group of third party witnesses who manufacture part of the accused Holley product in Bourbon, Indiana. These witnesses are just within this court's subpoena power. Holley Resp. Ex. I (witnesses 99.7 miles away). In considering witness convenience, the court must look to the nature and quality of the witnesses' testimony, not just the number of witnesses in each venue. *Confederation Des Brasseries de Belgique*, 2000 WL 88847 at *4. Grant's witnesses, including the patent inventor, will clearly be critical to the infringement and non-validity case. It is not clear that the Indiana employees are as significant. In any event, there is no evidence that the Indiana witnesses will be hostile or reluctant to appear voluntarily, or that their testimony cannot be offered through deposition. *Central States v. Kurtz Gravel Co.*, No. 98 C 2174, 1998 WL 684216, at *2 (N.D. Ill. Sept. 18, 1998). Therefore, witness convenience favors transfer to the Northern District of Georgia.

The court also must consider the convenience of the parties in its § 1404(a) determination. Specifically, the court should consider the parties' respective residences and their ability to bear the costs of litigating in a particular forum. *Avesta Sheffield v. Olympic Continental Resources, L.L.C.*, No. 99 C 7647, 2000 WL 198462 at *7 (N.D. Ill. Feb. 14, 2000). Grant offers evidence that it is a smaller company than Holley. Grant has approximately 60-65 employees and conducted approximately $9.8 million in business in 2003. Grant Dec. at ¶ 3. In contrast, Grant contends Holley has approximately 990 employees and conducted about $140 million in business in 2003.

11

*Id.* While neither party is destitute, the relative size of the parties favors transfer to the Northern District of Georgia.

### B.     Interests of Justice

Finally, the court must consider whether transfer is in the interests of justice. The interests of justice analysis focuses on efficient functioning of the courts, rather than the private interests of the litigants. *TIG Ins. Co. v. Brightly Galvanized Products, Inc.*, 911 F. Supp. 344, 346 (N.D. Ill. 1996). In determining the interests of justice, the court considers the possibility of consolidation with related litigation. *Serco*, 51 F.3d at 1040. It is both possible and in the interests of justice to consolidate this case with the parties' infringement case in the Northern District of Georgia. "The court should not countenance the simultaneous litigation of essentially identical claims in two federal courts." *Applexion*, 1995 U.S. Dist. LEXIS 4957 at *13. Holley argues, without support, that the court should retain jurisdiction because it is unlikely the Georgia court has as much experience with patent law as this court. Both districts are equally capable of resolving federal patent litigation. Holley also argues transfer or declining to exercise jurisdiction will cause delay, and Holley submits evidence that the median time of case disposition in the Northern District of Illinois is 5.3 months, while the median time in the Northern District of Georgia is 8.8 months. While this court has set a discovery schedule, a review of the Georgia docket shows that both cases have made comparable progress. In the Georgia case, Holley has moved to dismiss and transfer venue, just as Grant has done here. This is precisely the type of duplicative litigation that warrants transfer to ensure efficient functioning of federal courts. It will be a significant waste of judicial economies for two separate courts to adjudicate issues regarding the same patent. There is great risk that consideration of the

same patent by two separate federal courts will create inconsistent results, particularly with regard to claim construction rulings.

Therefore, even if Holley established reasonable apprehension and jurisdiction, this court would decline to exercise jurisdiction based on its consideration of judicial and litigant economy, the just and effective disposition of disputes, and the factors appropriate for transferring venue. *Coleman*, 1996 U.S. Dist. LEXIS 986 at *12.

## CONCLUSION

The motion to dismiss is granted, and the motion to transfer venue is moot. Alternatively, the court declines to exercise jurisdiction.

December 17, 2004

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge